1

2

3

4   IN THE UNITED STATES DISTRICT COURT

5   FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   CHILDREN'S HOSPITAL & RESEARCH          No. C 12-03862 SI
    CENTER OAKLAND, INC. D/B/A
8   CHILDREN'S HOSPITAL OAKLAND,            **ORDER DENYING CROSS-PETITION
                                            TO COMPEL ARBITRATION AND
        Plaintiff,                          DENYING MOTION FOR
9                                           PRELIMINARY INJUNCTION AND
                                            DECLARATORY JUDGMENT**
      v.
10

11  SERVICE EMPLOYEES INTERNATIONAL
    UNION, UNITED HEALTHCARE WORKERS-
12  WEST, and DOES 1 though 50, inclusive,

13      Defendants.
                                         /
14

15      On October 5, 2012, the Court held a hearing on plaintiff's motion for preliminary injunction

16  and declaratory judgment and defendant's cross-petition to compel arbitration ("hearing"). The Court

17  has reviewed and considered the parties' arguments, and for the following reasons hereby DENIES

18  defendant's cross-petition to compel arbitration and DENIES as MOOT plaintiff's motion for

19  preliminary injunction and declaratory judgment.

20

21                                    **BACKGROUND**

22      Plaintiff Children's Hospital Research Center Oakland ("Children's Hospital") filed suit against

23  defendant Service Employees International Union, United Healthcare Workers-West ("UHW"), seeking:

24  (1) an injunction permanently restraining UHW from requesting or compelling Children's Hospital to

25  arbitrate three employee grievances; and (2) a declaratory judgment that the UHW has no legal right to

26  compel Children's Hospital to arbitrate these grievances. *See* Complaint for Declaratory and Injunctive

27  Relief ("Compl.").

*United States District Court*
*For the Northern District of California*

Children's Hospital is a non-profit independent pediatric hospital and research center that employs more than 2,800 employees in its main facility. Compl. ¶ 9. UHW is a labor organization that represented Children's Hospital employees pursuant to a Collective Bargaining Agreement ("CBA"), initially in place December 8, 2010 through April 30, 2014. *Id.* ¶ 11. The CBA's grievance procedure involves a two-step process, after which either party can request arbitration. Declaration of Brenda Husband ¶ 4 ("Husband Decl."). The grievances in question were filed on June 16, 2011, August 13, 2011, and January 26, 2012, respectively. Declaration of Sharrion Marshall ¶ 2-4 ("Marshall Decl."). On May 22, 2012, following completion of the two-step process, the UHW demanded arbitration of all three grievances. *Id.*

On May 24, 2012, the National Labor Relations Board ("NLRB") certified the National Union of Healthcare Workers ("NUHW") as the majority union and exclusive bargaining representative for Children's Hospital employees. Compl. ¶ 13-14. Accordingly, the UHW lost its representative status. *Id.* However, on June 19, 2012, the UHW renewed its demand for arbitration under the terms of the CBA. *Id.* ¶ 16. On July 16, 2012, Children's Hospital's counsel sent a letter to UHW declining to arbitrate the grievances, and stated that if UHW did not withdraw its requests to arbitrate these grievances, it would seek injunctive relief. *Id.* at ¶ 17. At that time, Children's Hospital and NUHW had not yet begun negotiating a new CBA. Motion for Preliminary Injunction ("Mot. for Prelim. Inj.") at 6-7; Declaration of Bonnie Glatzer ("Glatzer Decl.") Ex. G.

On July 24, 2012, Children's Hospital filed a complaint for declaratory and injunctive relief, seeking declaratory judgment under 22 U.S.C. § 2201(a) that UHW has no legal right to compel Children's Hospital to arbitrate any unresolved grievances relating to Children's Hospital's employees, and to permanently enjoin UHW from requesting or compelling Children's Hospital to arbitrate any unresolved grievances relating to its employees. Compl. at ¶ 21. Plaintiff argues that arbitration would require bargaining, and that federal law prohibits an employer from bargaining with a decertified union where a new union has been certified. Pl. Reply at 5-6.

Subsequently, on August 29, 2012, the UHW filed a cross-petition to compel arbitration of the subject grievances, arguing that it would breach its duty of fair representation if it did not seek arbitration. Defendant's Cross-Petition ("Def.'s Cross-Pet") ¶ 16.

**United States District Court**
**For the Northern District of California**

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.*

The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc.*, 552 U.S. at 582. Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

In determining whether to issue an order compelling arbitration, the court may not review the merits of the dispute but must limit its inquiry to (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce, (2) whether there exists a valid agreement to arbitrate, and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. *See Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-478 (9th Cir. 1991), *cert denied*, 503 U.S. 919 (1992). If the answer to each of these queries is affirmative, then the court must order the parties to arbitration in accordance with the terms of their agreement. 9 U.S.C. § 4.

However, the strong presumption in favor of arbitration "does not confer a right to compel arbitration of any dispute at any time." *Volt*, 489 U.S. at 474. The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Accordingly, the Court reviews plaintiff's arbitration agreement in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24, and considers the enforceability according to the laws of the state of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003).

**DISCUSSION**

**1.     The UHW's decertification and NUHW's certification on May 24, 2012.**

In early 2009, a splinter group of UHW's officers and employees formed the NUHW.  Husband Decl. ¶ 5.  On February 2, 2009, NUHW filed a representation petition with the NLRB, Region 32, which sought an election to have NUHW certified as the exclusive bargaining representative of the employees in the bargaining unit that the UHW had represented.  *Id.*  Because the petition contained the requisite employee support, the NLRB held an election on May 16, 2012.  *Id.* at ¶ 6. The majority of Children's Hospital employees chose NUHW as their bargaining representative, whereupon the NLRB formally certified it as the exclusive bargaining representative on May 24, 2012. *Id.* at ¶ 6-7.  The UHW lost its representative status that day. *Id.*

An employer is obligated to negotiate with the majority union and with no other.  *Medo Photo Supply Corp. v. N.L.R.B.*, 321 U.S. 678, 683-84 (1944).  Moreover, a decertified union no longer has the authority to represent employees or to enforce any contractual rights it had negotiated on behalf of its employees where a new union has been certified in its place.  *See Federation of Union Representatives v. Unite Here*, 736 F. Supp. 2d 790, 796 (S.D.N.Y. 2010).  Additionally, a decertified union no longer has standing to enforce an arbitrator's award even if the arbitration was concluded and the award was entered before it was decertified. *Unite Here*, 736 F. Supp. 2d at 793.  Therefore, because NUHW was certified in UHW's place, UHW no longer retains any bargaining power on behalf of its employees.  However, UHW argues that its inability to bargain with Children's Hospital does not absolve or interfere with its duty to arbitrate these claims because arbitrating does not require bargaining.  In other words, UHW believes it can arbitrate these claims while avoiding any ancillary bargaining or negotiating.  And, UHW argues, failing to pursue arbitration here would require it to

United States District Court
For the Northern District of California

breach its duty of fair representation. Defendant's Opposition ("Def.'s Opp.") at 15.

The Court disagrees. To compel arbitration here would necessarily entangle Children's Hospital in bargaining and negotiations related to the arbitration proceeding. Ancillary to arbitration, parties are often required or encouraged to engage in settlement discussions or other kinds of negotiating that requires the exchange of information. *See Operating Engineers' Pension Trust Fund v. Fife Rock Products Co.*, No. C 10–00697 SI, 2010 WL 2635782, at *3 (N.D. Cal. June 30, 2010). In this case, the CBA states that arbitration would commence after UHW and Children's Hospital select an "impartial third party to be the Arbitrator and to hear and determine the issues." Cross-Pet. Ex. A. Arbitrator selection would likely require negotiations and agreement between the parties. To negotiate just that one term may expose Children's Hospital to an unfair labor practices charge.

To compel arbitration here would also narrow and constrain the arbitration process and limit the nature of award an arbitrator could issue. For instance, in *Unite Here,* the arbitral award itself, issued prior to decertification, contemplated that the parties would negotiate its terms. *Unite Here*, 736 F. Supp. 2d at 796 ("Certain aspects of the Award on their face call for prospective negotiations between the union and the employer; for example, the Award requires [the decertified union] to 'cease and desist from shifting liability for ... automobile insurance reimbursement onto bargaining unit members, until such time as the parties may negotiate otherwise,' and calls for UH to 'take whatever remedial steps necessary to implement' the foregoing order."). The Court held that such necessary negotiations of the award's terms would entangle the employer in prohibited bargaining. *Id.* at 796-97. Thus, the Court refused to force the employer to bargain with the decertified union. *Id.*

In this case, to avoid an unfair labor practices charge, the parties would be required to forego all of the usual ancillary bargaining and negotiating, and the arbitrator's award would have to be narrowly tailored so as to avoid the need for further negotiations. Further, to avoid having the parties bargain or negotiate invites this Court to micro-manage the arbitration process. The Court declines to compel arbitration on the one hand, while tying the parties' hands during that arbitration, on the other.

**2.      The UHW's demand for arbitration on May 22, 2012, prior to decertification.**

UHW argues that it has standing to pursue these grievances because it demanded arbitration prior

United States District Court
For the Northern District of California

to being decertified, under the then-existing CBA. Def.'s Opp. at 7. The Court disagrees. The UHW's demand for arbitration before decertification does not automatically confer a right to compel arbitration. *Unite Here*, 736 F. Supp. 2d at 793. *Unite Here* indicates that a union no longer has standing to enforce an arbitration award even when that award was entered prior to the union's decertification. *Id.* Certainly, if a decertified union cannot enforce an arbitration award it obtained prior to decertification, it follows that a decertified union cannot demand arbitration in the first instance. To allow the initial demand is akin to putting the parties on an crash course with *Unite Here*'s holding. Therefore, although UHW may have had standing to assert its demand for arbitration on May 22, 2012, the certification of a new union changed UHW's position.

The cases cited by UHW compel no different result. Def.'s Opp. at 8-11. In *United States Gypsum Company v. United Steel Workers of America,* 384 F.2d 38, 45-46 (5th Cir. 1967), the court found that the decertified union still had standing to assert grievances on behalf of its constituents, where there was no newly certified union. Likewise, *U.A.W. v. Telex Computer Pdts.,* 816 F.2d 519, 523-24 (10th Cir. 1987), held that "decertification does not retroactively obliterate [the] contract rights" of the decertified union, but there no new union was certified before the CBA expired. Indeed, Telex Computer quoted *Gypsum* in stating that where there is no competing union, the decertified union remained the authorized representative. *Id.* at 524.

At hearing, UHW also cited *Kenin v. Warner Bros. Pictures, Inc.,* 188 F.Supp. 690 (D.C.N.Y. 1960), for the proposition that a decertified union may legally continue to bargain with an employer so long as that bargaining does not substantially affect the bargaining rights of the newly certified union. However, *Kenin* had none of the arbitration-timing issues present in the instant case. The issue in *Kenin* was whether a superseded union could enforce a provision in an expired contract "that literally forever obligates the defendant-employer to obtain the superseded union's negotiated consent" in order to reuse its employees' theatrical movie work product on television. *Id.* at 695. The court weighed the "reasonable likelihood that the negotiations proposed by plaintiff will lead to a substantial impingement" of the new union's rights *only* to determine whether the "reasonably probable effect" of the decertified union's proposed injunction "would be violative of national labor policy." *Id.* at 694-95. The court did not weigh the facts as part of a "substantial effect" test, as UHW suggests here, but instead weighed the

facts in affirming the rule articulated in *Telex Computer* and *Gypsum* – where there is a competing, newly certified union, a "repudiated representative" does not possess the right to bargain. *Id.* at 695.

At hearing, UHW's counsel also cited two additional cases for the proposition that in the event arbitration takes place and the arbitral award envisions or requires bargaining, this Court has the authority to alter or enforce that award so as to avoid the exclusive bargaining problem described above. In *Glendale Mfg. Co. v. Local No. 520, Intern. Ladies' Garment Workers' Union, AFL-CIO*, 283 F.2d 936, 938 (4th Cir. 1960), the district court granted plaintiff-Union summary judgment to enforce an arbitral award, where the award directed the parties to meet and confer about a wage increase calculation, which the parties were not able to accomplish until several months after the expiration of the CBA and the certification of a new union. The Fourth Circuit reversed, holding that a court "cannot order an employer to bargain on the subject of the employees' wages with a union which does not represent the employees." *Id.* Where it was alleged that decertification made the arbitral award unenforceable, the Fourth Circuit found that the appropriate remedy was to refer the matter back to the arbitrator to fashion an enforceable award, i.e., one that did not require the employer to bargain with a decertified union over the substance of the employees's claims. *Id.* Similarly, in *United Elec., Radio and Mach. Workers of America v. Star Expansion Industries*, 246 F.Supp. 400, 400-01 (D.C.N.Y. 1964), the plaintiff-newly certified union sought to enjoin the decertified union and employer from completing an arbitration that started prior to decertification and expiration of the CBA. As a basic matter of contract law, the court held the newly certified union could not displace the decertified union because it was not a party to the CBA that required the parties to arbitrate in the first place. *Id.* at 401.

*Glendale* and *United Electric* are distinguishable from the instant case. In those cases, some amount of arbitration had already taken place prior to decertification, and the court sought to fashion a remedy to avoid the possibility of a labor violation from having an employer continue to bargain with a decertified union. In the instant case, as discussed at hearing, there is no arbitration award, no arbitration has taken place, and the parties have not even chosen an arbitrator. Should an arbitration actually take place between UHW and Children's Hospital, even if it were conducted in a narrow way so as to avoid bargaining, UHW's counsel conceded at hearing that the subsequent arbitral award could later present this Court with the same award enforcement problems in *Glendale* and *United Electric*.

Nothing in the cases cited compels the Court to create such problems in the first instance.  To the contrary, most of the cases discussed *supra* suggest that the Court should avoid ordering a remedy that invites the exclusive bargaining problem.  Were the parties already well into arbitration, this might present a different question.

Therefore, the Court declines to compel arbitration.


**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES defendant's cross-petition to compel arbitration and DENIES as MOOT plaintiff's motion for preliminary injunction and declaratory judgment.


**IT IS SO ORDERED.**


Dated: October 12, 2012

_____
SUSAN ILLSTON
United States District Judge